IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JERALD OVERTON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-CV-3263 |
| | ) | |
| SCHUWERK, et al., | ) | |
| Defendants. | ) | |

## OPINION

COLIN STIRLING BRUCE, U.S. DISTRICT JUDGE.

Plaintiff, proceeding pro se, pursues constitutional claims arising from a traffic stop, Plaintiff's arrest, the seizure and searches of Plaintiff's vehicle, and alleged damage to Plaintiff's vehicle during the searches.  Defendants move for summary judgment, which is granted for the reasons below.

## FACTS

The facts are set forth in the light most favorable to Plaintiff, drawing reasonable factual inferences in Plaintiff's favor and resolving credibility disputes in Plaintiff's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On March 19, 2009, shortly before 3:00 p.m., Plaintiff was driving a 1997 blue Jaguar from Kansas City to Chicago to attend

an aunt's funeral. Plaintiff's wife at the time was in the passenger seat.

Defendant Vahle, an Illinois State Trooper, was sitting in his trooper car on the highway median when he saw Plaintiff drive by. Officer Vahle observed that Plaintiff's car had no front license plate and that the driver's side window was tinted. Officer Vahle pulled out onto the highway and up next to Plaintiff's car, where Vahle observed through a partially open driver's side window that air fresheners were hanging from the rear view mirror. Vahle avers that the air fresheners were "large objects" and "were materially obstructing the driver's forward view from within the vehicle." (Vahle Aff. para. 8.) In his field report, Vahle numbered the air fresheners hanging from the rear view mirror as eight, (Vahle Field Report, d/e 1-1, p. 1), but Plaintiff contends that only two air fresheners were hanging and that they were not obstructing his view. Officer Vahle also observed a clear plastic cover over the rear registration plate as he pulled up to Plaintiff's vehicle. (Vahle Field Report, d/e 1-1, p. 1.)

Officer Vahle pulled Plaintiff over and approached Plaintiff's car. As Plaintiff produced his identification, registration, and

insurance, Plaintiff told Officer Vahle that Plaintiff may have an old outstanding arrest warrant issued by Cook County. Plaintiff testified in his deposition that the warrant was for violating his parole by moving out of state, from Illinois to Florida. At the time he moved to Florida in or around 2002, he had been on parole for a burglary conviction. (Pl.'s Dep. pp. 9-10; d/e 102, p. 16.) Officer Vahle confirmed the existence of the arrest warrant. Vahle avers that he was also informed "by an Illinois State Police dispatcher that [Plaintiff] had a prior history of involvement in gangs and weapons and was considered armed and dangerous." (Vahle Aff. para. 16.) Plaintiff disputes that the information relayed to Vahle was accurate, but Plaintiff does not dispute that this was the information that was in fact relayed to Vahle.

Officer Vahle handcuffed Plaintiff and placed Plaintiff in the front seat of the squad car. Defendant Cook, a State Trooper, and Defendant Roll, a Master Sergeant, arrived to assist Officer Vahle. Plaintiff's wife then stepped out of the vehicle as directed, and a warrantless search ensued of Plaintiff's vehicle without Plaintiff's consent.

The search began under the hood and progressed to the trunk, where the clothes of Plaintiff and his wife, including their undergarments, were removed from plastic bags. (Pl.'s Dep. p. 67.) Then the back and front seats were searched, and Defendants looked underneath the car. Officer Vahle then searched the locked glove box and found a loaded pistol.

Officer Vahle avers that, in addition to the loaded gun, the following items were found during the warrantless search: cannabis residue, multiple cell phones, laptop computers, multiple air fresheners and cans of air fresheners (which Officer Vahle avers are "often used to mask the presence of narcotics," tools "such as wrenches and a cordless drill, which are items commonly used to access secret compartments," "tooling marks on bolts and screws within the passenger compartment which gave indicia that interior parts of the car had been removed and replaced and could provide access to secret compartments," and a "'key'" in the center console, "which [Vahle believed was] an indicator of a secret compartment." (Vahle Aff. para. 28.)

Plaintiff denies that any cannabis residue or tools were in the car and denies any knowledge of a "key" or a secret compartment

(Pl.'s Dep. 73.)  He explains that the air fresheners were for his business, which provided restroom attendant services to nightclubs and restaurants.  He asserts that both he and his wife carried a personal cell phone and a business cell phone (four cell phones altogether).  He further asserts that the laptops were for his business and his wife's work at the Federal Aviation Administration.

Both Plaintiff and his wife denied knowledge or ownership of the gun.  Plaintiff's wife, who is not a party to this action, was arrested along with Plaintiff, and the two were taken to police headquarters.  According to Officer Vahle, Officer Douglas drove the Plaintiff's vehicle to the headquarters instead of having it towed, on the advice of the Pike County State's Attorney.  (Vahle Aff. para. 41.)

After arriving at the Pike County Sheriff's Office, Plaintiff admitted that the gun was his.  Plaintiff's wife was released, and Plaintiff was charged with being a felon in possession of a weapon.  He eventually pled guilty and was transferred to the Illinois Department of Corrections to serve a sentence concurrent with the probation violation.

According to Defendants, the next day, March 20, 2009, a dog trained to detect narcotics alerted to the presence of narcotics in

Plaintiff's vehicle by lying near the driver's side door. After the dog alerted, Officer Vahle drafted a complaint for a search warrant to search the vehicle for illegal drugs, including any secret compartments. (d/e 1-1, p. 7.) The facts alleged included the items Vahle says he found in the car set forth above and the dog alert. Judge Roseberry signed the search warrant on the morning of March 20, 2009. (d/e 1-1, p. 10.) After procuring the warrant, Officer Vahle participated in searching the vehicle at the police headquarters and then at Allen's Tire Service, where the undercarriage of the vehicle was inspected. (Vahle Aff. para. 58-59.) No illegal drugs were found, and the vehicle was released to Plaintiff's wife.

## DISCUSSION

### I.     Defendants have not demonstrated that the statute of limitations bars Plaintiff's claims.

Defendants argue that Plaintiff's claims are barred by the two-year statute of limitations. Plaintiff's claims arose in March, 2009, and he did not file this case until August, 2011, more than four months late if no exceptions apply.

The parties have focused on whether Plaintiff timely mailed his complaint from prison, but it turns out the answer to that question is not dispositive because of Plaintiff's case in the Illinois Court of Claims. Plaintiff filed his Court of Claims case in November, 2010, pursuing the same claims he pursues here. On July 24, 2013, the Illinois Court of Claims dismissed Plaintiff's constitutional claims for lack of subject matter jurisdiction. (d/e 42.)

Because Plaintiff initially filed his claims in the wrong forum, statutory or equitable tolling may apply to extend the limitations period. *Hayes v. Hile*, 527 Fed.Appx. 565 (7th Cir. 2013)(not reported in F.3d)("Illinois grants a 1-year period to refile claims dismissed by the Court of Claims for lack of subject-matter jurisdiction."), *citing* 735 ILCS 5/13-217; *Edwards v. Safer Found., Inc.*, 171 Ill.App.3d 793 (1988)(good faith but incorrect filing in court of claims tolled statute of limitation in personal injury suit); *see also Clay v. Kuhl*, 189 Ill.2d 603 (2000)("Equitable tolling . . . may be appropriate if . . . the plaintiff has mistakenly asserted his or her rights in the wrong forum.") Defendants do not address the tolling issue and therefore have not met their burden of proving their affirmative defense.

## II. Officer Vahle had probable cause for the traffic stop and for Plaintiff's arrest.

Officers need probable cause to believe a traffic violation, however minor, has occurred in order to pull over a vehicle. *U.S. v. Taylor*, 596 F.3d 373 (7th Cir. 2010); *United States v. Hernandez–Rivas*, 513 F.3d 753, 759 (7th Cir.2008) ("[P]robable cause exists when the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense.").

Plaintiff agrees that he had no front license plate, a tinted driver's window, at least two air fresheners hanging from the rear view mirror, and a clear cover over the rear license plate.

Certain kinds of tinted front windows are not permitted, 625 ILCS 5/12-503(a-5), but Officer Vahle does not elaborate on whether or why he believed that Plaintiff's tinted windows violated Illinois law. However, state law does prohibit items hanging from the rear view mirror which materially obstruct the driver's view. 625 ILCS 5/12-503(c). "[A]ir fresheners may (or may not) constitute material obstructions depending on their size, their position relative to the driver's line of vision, and whether they are stationary or

mobile." *U.S. v. Garcia-Garcia*, 633 F.3d 608, 615 (7th Cir. 2011). The Court has no information on the size of the air fresheners, and Plaintiff contends that his forward view was unobstructed, so the Court cannot determine whether probable cause existed to pull Plaintiff over for the air fresheners hanging from the rear view mirror.

Plaintiff, however, admits to the rear license plate cover. At the time of the stop, 625 ILCS 5/3-413(b) required the license plate to be "clearly legible, free from any materials that would obstruct the visibility of the plate, including, but not limited to, glass covers and plastic covers." Clear plastic covers which did not obstruct the plate's visibility had been allowed in an earlier version of the statute, but that sentence had been deleted in a 2007 amendment. Illinois Public Act 95-29, IL LEGIS 95-29 (2007). This change "was to make it 'abundantly clear that clear license plate covers are illegal'" because of concerns that the covers might help evade photo radar and cameras. *People v. Gaytan*, 992 N.E.2d 17, 25 (2013), *appeal allowed, People v. Gaytan,* 996 N.E.2d 18 (2013).[1]

---

[1] This section was further amended in 2013 to remove the language "including but not limited to glass covers and plastic covers" and to add a new subsection stating "a person may not operate any motor vehicle that is equipped with registration plate covers." 625 ILCS 5/3-413(g).

Therefore, Plaintiff's clear cover on his rear license plate provided probable cause for the initial traffic stop under 625 ILCS 5/3-413(b), even if the cover did not obstruct the plate's legibility. Additionally, Plaintiff had no front license plate, which was also a traffic violation under Illinois law. 625 ILCS 5/3-13(a)("Registration plates issued for a motor vehicle . . . shall be attached thereto, one in the front and one in the rear."). Plaintiff asserts that the real reason he was pulled over was because of his race, but he offers no evidence to support that conclusion.

The arrest warrant precludes a claim based on the traffic stop in any event. "[A] person named in a valid warrant has no right to be at large, and so suffers no infringement of his rights when he is apprehended unless some other right of his is infringed, . . . ." *Atkins v. City of Chicago*, 631 F.3d 823, 827 (7th Cir. 2011); *U.S. v. Johnson*, 383 F.3d 538 (7th Cir. 2004)( "The officers' knowledge that Johnson was wanted on an outstanding warrant constituted an intervening circumstance, which gave officers probable cause to arrest Johnson independent of the illegality of the initial unlawful stop."); *see also Banks v. Fuentes*, 545 Fed. Appx. 518, 520-21 (7th Cir. 2013)(not published in Federal Reporter)(dispute regarding

whether traffic violation had occurred to justify stop was immaterial because an investigative alert had already been issued regarding the plaintiff).  Plaintiff admits, and there can be no reasonable debate, that probable cause existed to arrest him because of the outstanding arrest warrant.

### III. The warrantless search of Plaintiff's vehicle met the automobile exception and the search-incident-to-arrest exception as defined by binding precedent when the search occurred.

Absent an exception, police need a warrant to search a vehicle. *Arizona v. Gant*, 556 U.S. 332 (2009)("'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—. . . .'")(*quoting Katz v. United States*, 389 U.S. 347 (1967)).  Two exceptions to that rule are relevant here:  the "search-incident-to-arrest" exception and the "automobile exception."

The Supreme Court in *Gant* held that the search-incident-to-arrest exception applies when "the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" or when it is "'reasonable to believe evidence relevant to the

crime of arrest might be found in the vehicle.'"  *Gant*, 556 U.S. at

342.

In this case, Plaintiff was not within reach of the vehicle when

the warrantless search occurred.  He was handcuffed and secured

in the patrol car.  And, the warrantless search could not have

uncovered evidence relevant to Plaintiff's arrest on the outstanding

parole violation warrant.  In short, the warrantless search of the

vehicle does not qualify under the search-incident-to-arrest

exception as defined by *Gant.*

However, the Court agrees with Defendants that qualified

immunity protects them from Plaintiff's claims arising from the

warrantless search of the vehicle.  *Gant* was decided on April 21,

2009, one month after the events here.  *Gant* significantly narrowed

the search-incident-to-arrest exception as understood in this

Circuit.  Before *Gant,* the Seventh Circuit, as had other circuits,

had interpreted the Supreme Court case of *New York v. Belton*, 453

U.S. 454, 460 (1981), to permit warrantless searches of the

passenger compartment of vehicles incident to a lawful arrest

without regard to the location of the arrestee.  *U.S. v. Cartwright,*

630 F.3d 610, 613 (7th Cir. 2010)("At the time of this encounter [August, 2008], our circuit allowed police to search a vehicle incident to the driver's arrest even after having removed and secured the driver."); *United Stated v. Karlin*, 852 F.2d 968 (7th Cir. 1988)(search of van's interior permissible incident to arrest even though arrestee was handcuffed in police car). The passenger compartment includes the front and back seats, the glove compartment (whether locked or unlocked), the console, any containers in the passenger compartment (whether open or closed), secret compartments, and the trunk, if accessible from the passenger compartment. *See U.S. v. Arnold*, 388 F.3d 237, 240 (7th Cir. 2004)(protective search covered trunk which was accessible from passenger compartment); *New York v. Belton*, 453 U.S. 454, 460-61 (1981), *modified on other grounds by Gant.*

When Plaintiff was arrested in March, 2009, a reasonable officer would have believed that searching the vehicle without a warrant was lawful because Plaintiff's arrest was lawful. *Gant*, 556 U.S. at 350 n. 11 ("Because a broad reading of *Belton* has been widely accepted, the doctrine of qualified immunity will shield officers from liability for searches conducted in reasonable reliance

on that understanding."); *Phillips v. Community Ins. Corp.*, 678 F.3d 513, 528 (7th Cir. 2012)("Qualified immunity protects an officer from liability if a reasonable officer could have believed that the action taken was lawful . . . ."). Defendants are protected by qualified immunity regarding their search of the passenger compartment, including the glove box.

The vehicle's "passenger compartment" arguably does not include the hood, the trunk (assuming the trunk was not accessible from the passenger compartment), or the trunk's contents. *See New York v. Belton*, 453 U.S. 454, 460 and n.4 (1981)(search-incident-to-arrest exception does not apply to trunk). But it does not matter, because the automobile exception also applies. The automobile exception allows the warrantless search of any part of the vehicle in which contraband might reasonably be found, including the trunk and the hood. *United States v. Nicksion*, 628 F.3d 368, 377 (7th Cir.2010); *U.S. v. Zahursky*, 580 F.3d 515, 523 (7th Cir. 2009); *U.S. v. Alexander*, 573 F.3d 465 (7th Cir. 2009).

The automobile exception applies here because probable cause existed to believe that Plaintiff's vehicle contained contraband, namely a weapon or weapons. *U.S. v. Slone*, 636 F.3d 845, 848 (7th

Cir. 2011)(Probable cause existed if, "based on a totality of the circumstances 'there [was] a fair probability that contraband or evidence of a crime [would] be found in a particular place.'") *United States v. Zahursky*, 580 F.3d 515, 521 (7th Cir.2009) (*quoting Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Plaintiff does not dispute that Officer Vahle was "provided information by an Illinois State Police Dispatcher that [Plaintiff] had a prior history of involvement in gangs and weapons and was considered armed and dangerous." (Vahle Aff. para. 16.) This, along with the outstanding warrant, gave Officer Vahle probable cause to believe that Plaintiff was a felon and that his vehicle may contain a gun, which is evidence of criminal activity—the possession of a weapon or weapons by a felon. 720 ILCS 5/24-1.1 (unlawful possession of weapon by convicted felon).

Plaintiff argues that no reasonable officer could have concluded that Plaintiff was dangerous, since Plaintiff had voluntarily provided information about his arrest warrant and was secured in the patrol car when the search began. Whether Plaintiff presented a danger is not the issue; the issue is whether probable cause existed that the vehicle contained evidence of criminal

activity. A fair probability existed, based on the outstanding arrest warrant and the telecom report, that weapons would be found in the vehicle. The seizure of the vehicle was proper for the same reason, and was supported additionally by the gun found in the glove box.

Plaintiff contends that Officer Vahle was looking for drugs, not guns. But Officer Vahle's subjective reason for initiating the search is not relevant to the Fourth Amendment analysis. *See Huff v. Reichert*, 744 F.3d 999, 1007 (7th Cir. 2014)("The probable cause inquiry is an objective one; an officer's subjective motivations do not invalidate a search otherwise supported by probable cause."); *U.S. v. Williams*, 627 F.3d 247 (7th Cir. 2010)(Officer's "subjective reasons for making the stop and initiating the search are irrelevant").

### IV. Officer Vahle's alleged false statements in the complaint for the search warrant were not material.

An officer who makes knowingly false or recklessly false and material statements in an application for a search warrant violates the Fourth Amendment. *Scherr v. City of Chicago*, 2014 WL 2958611 *3 (7th Cir. 2014). To be material, the false statements

must be "necessary to the determination that a warrant should issue." *Knox v. Smith*, 342 F.3d 651, 658 (7th Cir. 2003).

Plaintiff maintains that Officer Vahle falsely stated (1) that tools were present in Plaintiff's vehicle "which consisted of cordless drill and wrenches which are items that can be used to hide drugs in a secret compartment"; (2) that Plaintiff had an extensive criminal history in Florida as well as Illinois (Plaintiff does not contest his Illinois criminal history); and (3) that cannabis residue had been found in the vehicle.[2]

Yet even if all these purportedly false statements were omitted, Plaintiff does not dispute that a trained drug dog alerted to the presence of illegal drugs in Plaintiff's vehicle. The alert alone, particularly with the evidence of the loaded gun and Plaintiff's undisputed criminal history, would have provided probable cause to search Plaintiff's vehicle for illegal drugs. *See United States v. Washburn*, 383 F.3d 638, 643 (7th Cir.2004) ("[W]e have held that a positive alert by a trained drug dog gives rise to probable cause to

---

[2] Plaintiff also assails the inferences drawn from true facts in the complaint for a search warrant, such as the multiple cell phones and air fresheners. But these were not false statements; they were simply facts from which more than one reasonable inference might be drawn.

search a vehicle."), *citing U.S. v. Limares*, 269 F.3d 794, 798 (7th Cir.

2001); *United States v. Thomas*, 87 F.3d 909, 912 (7th Cir. 1996).

## V. Plaintiff has no admissible evidence that Defendants damaged his vehicle.

Some damage to property may be necessary during a lawful

search. <u>Dalia v. U.S.</u>, 441 U.S. 238, 258 (1979)([O]fficers executing

search warrants on occasion must damage property in order to

perform their duty.")  However, "[e]xcessive or unnecessary

destruction of property in the course of a search may violate the

Fourth Amendment . . . ."  *U.S. v. Ramirez*, 523 U.S. 65, 71 (1998).

According to Vahle, who participated in the searches,

"[a]lthough clothes and personal items were scattered about the

inside of the car and trunk, Illinois State Police personnel did not

damage the vehicle or its contents while it was in their possession."

(Vahle Aff. para. 60.)

Plaintiff admits that his vehicle was not damaged during the

roadside search.  Of this he has personal knowledge because he

witnessed the search.  Plaintiff maintains that the damage must

have occurred during the later searches for which he was not

present.  He submits photos of the purported damage, asserting

that his wife took the photos and that she saw the damage when the vehicle was released to her.  But Plaintiff's testimony as to what his wife said or did is inadmissible hearsay, and there is no affidavit from Plaintiff's wife (now ex-wife).  Plaintiff attached to his complaint a purported statement from his wife, but the statement is not dated or sworn, nor does it authenticate the photos or detail the damage.[3]  *See Smith v. Bray*, 681 F.3d 888, 894 n. 1 (7th Cir. 2012)(affirming district court's refusal to consider, on summary judgment, hearsay or evidence which lacked foundation or was unauthenticated).

Even if Plaintiff had submitted an affidavit from someone with personal knowledge of the condition of the car when it was released, Plaintiff has no evidence that any of Defendants were responsible for that damage.  Plaintiff's belief that the dog scratched the doors is speculation; he has no evidence to dispute that the dog never scratched the vehicle but instead alerted by lying on the ground by the car door.  His argument that Defendants personally damaged

---

[3]The quality of the photos makes it hard to see significant damage.  However, Plaintiff asserts that there were scratches on the doors; the radio, cigarette lighter and CD player no longer worked; the antenna was ripped off and "smashed"; the liner on the interior of the roof of the car was ripped out; the wood grain was removed from the console; the door panels were separated from the door; light plates were missing; screws were missing; and the laptops no longer worked.  (Pl.'s Dep. pp. 163-174.)

the vehicle is likewise based on speculation.  *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010)("[O]ur favor toward the nonmoving party [at the summary judgment stage] does not extend to drawing "[i]nferences that are supported by only speculation or conjecture.")(quoted cite omitted).  Of all the Defendants, only Defendant Vahle participated in the searches after the warrant issued.  Plaintiff has no evidence that Vahle was responsible for any damage done to the vehicle, much less any unreasonable damage. *See, e.g., Molina v. Cooper*, 325 F.3d 963, 974 (7th Cir. 2003)(affirming summary judgment to defendant where he was one of many who conducted search; his presence in the truck was not enough to allow an inference that he was the one who had damaged the truck).

**IT IS THEREFORE ORDERED THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IS GRANTED (d/e 36).**  The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff.  All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs.  All deadlines and settings on the Court's calendar are vacated.  If Plaintiff wishes to appeal this judgment, he must file a

notice of appeal with this Court within 30 days of the entry of

judgment.  Fed. R. App. P. 4(a)(4).


ENTERED:  July 22, 2014

FOR THE COURT:

**s/Colin Stirling Bruce**

COLIN STIRLING BRUCE
UNITED STATES DISTRICT JUDGE